## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PRERACIO WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22-cv-1300-NJR |
| ) | |
| ) | |
| KIMBERLY BILLINGTON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Preracio Williams, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center. In the Complaint, Williams alleges he was sexually assaulted and retaliated against by Kimberly Billington. He asserts claims against Billington under the First and Eighth Amendments, as well as Illinois state law.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

In his Complaint, Williams makes the following allegations: Starting in March 2020, Williams was harassed and then ultimately sexually assaulted by dietary supervisor Kimberly

1

Billington (Doc. 1, p. 6). In March 2020, while working in the dietary at Lawrence, Williams encountered Billington in her office and requested supplies (*Id.*). He had previously heard a rumor that Billington flirted with inmates, and he was nervous about her questions regarding his age. She proceeded to make suggestive comments to Williams (*Id.*). Throughout the month of March and the months thereafter, Billington continued to flirt with Williams and wrote notes to him, leaving them in his shoes to read (dietary workers are required to remove their shoes and wear special shoes during their work hours) (*Id.* at p. 7). Williams would read the notes and then flush them down the toilet (*Id.*).

Williams informed Billington that he was not interested in her and asked her to stop writing the notes (*Id.*). But Billington threatened his life and freedom, indicating that she would tell internal affairs he was involved in gang activity (*Id.*). She further warned Williams that staff would not believe his claims against her because he was an inmate and African-American (*Id.*). The letters continued. Many of the letters were provocative, indicating the sex acts that Billington wanted to perform with Williams (*Id.* at p. 8).

At some point, Billington began to sexually assault Williams. She would "assist" him with his tasks in the dietary closet and, once inside, would forcefully kiss him and direct him to kiss and fondle her (*Id.*). On one occasion, she performed oral sex on him (*Id.*). She continued to warn Williams that if he told anyone or reported her, she would tell internal affairs that Williams raped her (*Id.* at pp. 8-9).

Between May and July, Billington provided Williams with her phone number and directed him to call her while not on duty in the dietary (*Id.* at p. 9). When Williams lied to her, indicating that he submitted the number but it was not added to his phone list, she threatened to accuse him of rape (*Id.*). Williams placed Billington on his phone list and called her on a number of occasions. On each occasion, Billington used the phone calls for her own pleasure (*Id.* at p. 10).

During this same time period, Billington approached Williams in the dietary closet and provided him with cigarettes, in exchange for the sexual encounters (*Id*.). These assaults continued throughout 2020 until November (*Id*.). At times Billington threatened not only Williams but his family, indicating that she knew their names, addresses, and phone numbers (*Id*.). Billington was suspended sometime in November 2020, but when she returned, the assaults continued, increasing from oral sex to sexual penetration (*Id*. at pp. 11-12).

The sexual assaults continued until August 2021 (*Id*. at p. 12). Williams was placed on investigative status when the cigarettes Billington provided him were found in his cell, along with some of the notes that Williams had not destroyed (*Id*.). Williams eventually informed internal affairs of the events surrounding Billington's assaults and submitted a Prison Rape Elimination Act ("PREA") report (*Id*. at pp. 12-13). The report was deemed substantiated, Billington resigned from her position at Lawrence, and the case was forwarded to the Lawrence County State's Attorney for possible prosecution (*Id*. at p. 12-13, 25). Williams was transferred to Pinckneyville (*Id*. at p. 13).

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following enumerated counts:

> **Count 1:** **Eighth Amendment cruel and unusual punishment claim against Kimberly Billington for sexually assaulting Williams on numerous occasions.**
>
> **Count 2:** **First Amendment retaliation claim against Kimberly Billington for threatening retaliatory conduct against Williams in retaliation for not complying with her sexual demands.**
>
> **Count 3:** **Illinois State law claim of assault and/or battery.**
>
> **Count 4:** **Illinois State law claim of intentional infliction of emotional distress.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

At this stage, Williams states valid claims under the Eighth Amendment for cruel and unusual punishment as well as state law claims of assault and battery. "An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (citing *Mays v. Springborn,* 575 F.3d 643, 650 (7th Cir.2009); *Calhoun v. Detella,* 319 F.3d 936, 939-40 (7th Cir. 2003)). Further, Williams's state law claims arise under the same operative facts and state a valid tort claim for assault and/or battery. *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001). Thus, Counts 1 and 3 will proceed. The Court will also allow Williams to proceed with his retaliation claim (Count 2) and state law claim for intentional infliction of emotional distress (Count 4).

## Pending Motions

As to Williams's request for counsel (Doc. 3), he indicates that he had the help of an inmate to draft his Complaint. His Complaint further raises serious allegations which would benefit from the assistance of counsel. Thus, the Court will recruit counsel for Williams. Counsel will be assigned by separate order.

---

[1] This includes Williams's generic claim of negligence. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Disposition**

For the reasons stated above, Williams states valid claims in Counts 1-4 against Kimberly Billington.

The Clerk of Court shall prepare for Defendant Kimberly Billington: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Billington's former place of employment, Lawrence Correctional Center. Lawrence Correctional Center shall furnish the Clerk with Billington's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk. If Billington fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on her, and the Court will require her to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Defendant Billington is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Williams, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Williams is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  December 13, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the defendant of your lawsuit and serve her with a copy of your Complaint. After service has been achieved, the defendant will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take **90 days** or more. When defendant has filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**